**BEN TRAVIS LAW, APC**
Ben Travis (SBN 305641)
*ben@bentravislaw.com*
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Phone: (619) 353-7966

Attorney for Plaintiff
Jessica Atterbury and the Proposed Class

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA ATTERBURY, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SOUNDHOUND, INC., a Delaware Corporation,<br><br>Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**<u>CLASS ACTION</u>** |

Plaintiff JESSICA ATTERBURY ("Plaintiff") brings this class action on behalf of herself and all others similarly situated against SOUNDHOUND, INC. ("SoundHound" or "Defendant"). Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to herself.

## NATURE OF THE CASE

1. Defendant operates two mobile applications: *SoundHound – Music Discovery*, a music identification app, and *SoundHound Chat AI*, a voice assistant app. Defendant also runs a broader voice AI platform called Houndify, which powers its mobile applications as well as voice-enabled services for third-party companies.

2. Originally offering only a music recognition app, SoundHound has since evolved into a company leveraging voice-enabled technology. Through its Houndify platform, SoundHound not only provides music identification, but also facilitates voice search, virtual assistant applications, and voice AI tools for businesses seeking to incorporate voice interaction capabilities.

3. As part of this evolution, SoundHound incorporated advanced features such as "speaker recognition"—also referred to as "voice recognition"—a biometric technology designed to identify an individual based on their unique voice. Speaker recognition systems rely on a "voiceprint," which is a digital representation of the distinct physical and behavioral traits of a person's voice. Much like a fingerprint, a voiceprint captures attributes such as pitch, tone, speech patterns, and cadence, allowing the system to distinguish individual speakers. This is distinct from speech recognition, which merely transcribes spoken words into text.

4. Speaker recognition and voice biometrics are central to SoundHound's Houndify platform. Houndify's speaker recognition capabilities enable it to identify and differentiate individual users based on unique vocal characteristics, allowing SoundHound to build detailed, persistent user profiles over time. SoundHound's

Privacy Policy and other publicly available communications confirm SoundHound's ability to collect and retain such voice-based data.

5. SoundHound has failed to comply with the requirements of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/15(a), including the necessity of obtaining informed consent and maintaining clear retention and destruction policies for biometric data. Consequently, Plaintiff and other class members' biometric data has been unlawfully collected and stored.

6. Plaintiff thus seeks damages, restitution and injunctive relief, and any other relief deemed appropriate by the court to which this case is assigned. Plaintiff also seeks public injunctive relief to protect the general public.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendant because Defendant is headquartered in Santa Clara, California, has conducted and continues to conduct business in the State of California, and because Defendant has committed the acts and omissions complained of herein in the State of California.

8. This court has subject matter jurisdiction under 28 U.S.C. § 1332(d), as Plaintiff (Illinois) and Defendant (California) are diverse, there are over 100 class members, and the amount in controversy exceeds $5 million.

9. Venue is proper in this District because Defendant resides within this District.

## DIVISIONAL ASSIGNMENT

10. Assignment to the San Jose Division under Civil Local Rules 3-2(c) and 3-2(e) is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Santa Clara County.

## PARTIES

11. **Plaintiff Jessica Atterbury** is, and at all times mentioned herein was, an individual citizen of the State of Illinois and resident of Illinois.

12. Plaintiff has used the *SoundHound – Music Discovery* application (the

"Music Discovery App"), including its voice AI features.

13. Upon information and belief, SoundHound collected, captured, or otherwise obtained Plaintiff's voiceprint as a biometric identifier without her consent.

14. Plaintiff attempted to arbitrate her claims against SoundHound before the American Arbitration Association ("AAA"). Plaintiff properly filed her claims in the AAA. The AAA then requested SoundHound to waive a provision in its arbitration agreement that was unfair to Plaintiff and did not comply with the AAA's Consumer Rules. However, SoundHound refused.

15. As a result, the AAA declined to administer Plaintiff's case and informed the parties that Pursuant to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

16. Therefore, Defendant has materially breached its arbitration clause and dispute resolution procedures, and has thus waived enforcement of its arbitration clause and class waiver.

17. **Defendant SoundHound, Inc.** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 5400 Betsy Ross Drive, Santa Clara, California 95054.

## FACTUAL ALLEGATIONS

18. From its inception, SoundHound has relied on extracting machine-readable information from audio. Initially designed to identify songs, SoundHound's technology evolved to process human speech. Today, it powers "voice AI" that listens to and analyzes individuals' voices to tailor results, learn preferences, and target ads.

19. SoundHound began as a music recognition tool that captured audio and generated unique "fingerprints" to identify songs. Music recognition, like that of SoundHound, processes brief audio snippets of a song by filtering out background

4
CLASS ACTION COMPLAINT

noise, isolating key musical features, and generating an audio fingerprint. This fingerprint is then analyzed against SoundHound's database of pre-indexed audio signatures, using proprietary pattern-matching algorithms to detect a match. If a match is found, the app displays details such as the song title, artist, and album.

20. However, identifying music was never the end goal. SoundHound CEO Keyvan Mohajer explained, "The music app was always meant to be the first step toward a much bigger vision. Behind the scenes, the company has been building speech recognition and natural language processing technology, allowing it to understand a wide range of human questions and commands."[1] Automatic Speech Recognition ("ASR") refers to the technology by which spoken language is converted into written text, enabling computers to transcribe and process human speech. Natural Language Processing ("NLP") encompasses the subsequent task of analyzing the transcribed text—identifying its structure, meaning, and intent—to enable computers to interpret and respond to human language.

21. In 2015 and 2016, SoundHound launched Hound, a voice search and virtual assistant app, alongside, and powered by, Houndify—a voice AI developer platform designed to allow third parties to integrate ASR and NLP technologies into their own products and services. Hound and Houndify represented SoundHound's transition from a consumer-facing music identification tool into a business-to-business voice AI provider, offering an alternative to platforms like Amazon Alexa and Google Assistant. Through Houndify, SoundHound invited companies to build voice interfaces into mobile apps, connected devices, and other services by using its proprietary tools.

22. At the time of their release, SoundHound repeatedly described Hound and Houndify as incorporating "voice recognition." In its June 2, 2015 press release, the company emphasized that Hound "combines voice recognition and natural

---

[1] https://techcrunch.com/2015/06/02/soundhound-launches-hound/ (last accessed, April 23, 2025).

language understanding in real-time."[2] In a March 1, 2016 press release announcing its more public launch, SoundHound stated that, "Hound is constantly improving upon its voice recognition technology for greater accuracy with new data, so the app can consistently provide more answers on a wider variety of search queries or commands."[3]

23.     Furthermore, SoundHound's patent, "Natural Language Grammar Enablement by Speech Characterization," filed in 2017, demonstrates how its "voice speaker identification" software can be used within "a system that performs automatic speech recognition (ASR) and natural language processing":

> The present invention provides a human-machine interface that feels much more natural to users. Humans, in naturally interpreting spoken utterances, let clues about the attributes (age, gender, ethnicity, mood, prosody) of a speaker influence their interpretations. Furthermore, for specifically known speakers, humans apply all of their knowledge of the speaker in their interpretations. These human skills in interpretation work even without visual clues. Over telephone calls and teleconference humans interpret what they hear according to how they classify the voice of unknown speakers or identify particular known speakers by voice. The present invention provides for natural, conversational, human-machine interfaces in ways that conventional applications of voice classification and voice speaker identification do not.
>
> Some embodiments use the valuable information identifiable from speaker and utterance characteristics to provide more appropriate and

---

[2] https://web.archive.org/web/20240517235936/https://www.businesswire.com/news/home/20150602006172/en/SoundHound-Inc.-Introduces-Hound-Unprecedented-Speech-Recognition-Natural-Language-Understanding-and-the-Houndify-Developer-Platform (last accessed, April 23, 2025).

[3] https://web.archive.org/web/20220101171134/https://www.businesswire.com/news/home/20160301005920/en/SoundHound-Inc.-Launches-Hound-The-World%E2%80%99s-Most-Advanced-Voice-Search-Assistant-App-Using-Its-Proprietary-Speech-to-Meaning-Technology (last accessed, April 23, 2025).

more useful behaviors and results. Characterization according to some embodiments comprises classification of the speaker by one or more of age, gender, accent, prosody, and mood among other identifiable characteristics of speech utterances. Characterization according to some embodiments comprises voice speaker identification to identify a user profile, including a set of permissions and a set of other properties that describe the user.[4]

24. The Patent goes on to describe a potential use case:

Accordingly, an utterance about, "How are the bears doing" is interpreted for one user as a query about the standing of the sports team in its division and interpreted for another user as a query about the status of a recovering endangered species.[5]

25. In 2017, the Music Discovery App incorporated Houndify's voice AI capabilities, enabling users to activate the system with the wake phrase "OK Hound," which has since evolved to "Hey SoundHound." This enhancement allowed users to perform specific song searches and make requests through vocal prompts.

26. Concurrently, SoundHound significantly expanded, selling Houndify and its voice AI tech stack to major entities such as Hyundai, Honda, and Pandora. During this time, SoundHound's public communications emphasized that "the ability to maintain your customer connections and control their data" is "the most important aspect of using a customized voice AI platform."[6]

27. Additionally, SoundHound suggested in various articles that research could involve "[a]nalyz[ing] the acoustics of specific participants to customize an

---

[4] https://patentimages.storage.googleapis.com/db/a4/3f/c389b31a09600b/US10347245.pdf (last accessed, April 28, 2025).

[5] *Id.* (last accessed, April 28, 2025).

[6] https://www.soundhound.com/voice-ai-blog/make-your-voice-assistant-discoverable-and-increase-adoption-c1efe1bf89fc/ (last accessed, April 23, 2025).

[Natural Language Understanding] system for a target user base," while companies could also collect data like "Personas for customer profiles," "Biometrics," and "Sentiment Analysis."[7]

28. In 2020, SoundHound was also beta testing "emotion detection, automatic language translation, and voice biometrics."[8]

29. By 2021, SoundHound had refined Houndify's capabilities, achieving "unmatched accuracy and speed in voice recognition" and appearing to equip Houndify with speaker recognition capabilities, with the clearly articulated goal of monetizing voice AI.[9] SoundHound asserted, "Conversational voice AI that understands complex and compound queries, coupled with **voice biometrics**, personalization, and the ability to speak the language of your users is key to useful monetization moments."[10] (emphasis added).

30. SoundHound's 2021 patent, "Deriving Acoustic Features and Linguistic Features from Received Speech Audio," further clarified its technology's ability to extract voice characteristics like pitch, speed, and accent to build user profiles and infer user demographics and preferences. SoundHound writes:

> A user profile includes of a set of properties that describe user characteristics and preferences. One aspect of the present disclosure is a method for building a user profile using speech-based information (after receiving the user's permission). A system module may receive

---

[7] https://www.soundhound.com/voice-ai-blog/the-richness-of-data-guiding-principles-of-voice-user-research/ (last accessed, April 23, 2025).

[8] https://d3.harvard.edu/platform-digit/submission/soundhound-voice-intelligence-anywhere/ (last accessed, April 23, 2025).

[9] https://www.businesswire.com/news/home/20210421005313/en/SoundHound-Inc.-Announces-the-Expansion-of-Houndify-Voice-AI-to-22-Languages (last accessed, April 23, 2025).

[10] https://www.houndify.com/monetize-voice-assistant (last accessed, April 23, 2025).

speech as input, extract speech features from those inputs, and produce a text transcription of the input speech, from which language-based features may also be gathered. The extracted features may be used to determine information about the user for inclusion in the user's profile. Extracted features may be used in isolation, or detected patterns in a combination of extracted features may be used to infer user characteristics.[11]

31. Therefore, SoundHound "mechanically analyzes customers' voices in a measurable way." *See Carpenter v. McDonald's Corp.,* 580 F. Supp. 3d 512, 517 (N.D. Ill. 2022). Further, SoundHound's statements demonstrate that records of users' interactions with Houndify-powered voice AI technology, along with mechanical metrics thereof, are construed as distinct personal attributes or "unique personal feature[s] that can be used to identify a person." *See id.* at 515.

32. By 2022, SoundHound's Houndify platform included a transcription service with "diarization," processing voice data in real time to identify speakers and topics, leading to enhanced transcription accuracy.

33. Houndify's current capabilities include "Intelligent Transcription," which "quickly identifies custom topics, prebuilt topics, and speakers."[12] This feature, integrated into Houndify's ASR technology, is grounded in deep learning to ensure maximum accuracy across various conditions. SoundHound asserts:

> By augmenting our data with the unique characteristics of your user's environment, such as ambient noise, multiple speakers, and echos, we are able to deliver ASR models with unprecedented accuracy.[13]

---

[11] https://patentimages.storage.googleapis.com/12/31/42/59b966cc0bff29/US2021027 2552A1.pdf (last accessed, April 28, 2025).

[12] https://www.soundhound.com/voice-ai-products/intelligent-transcription/ (last accessed, April 23, 2025).

[13] https://www.soundhound.com/voice-ai-products/asr/ (last accessed, April 23, 2025).

34. SoundHound promotes its ASR as incorporating "Speaker ID" and "Speaker Verification," enabling systems to identify speakers and authenticate claimed identities.[14] Other features within Houndify, such as its "Advanced Wake Word" technology, also utilize Biometric Speaker IDs.[15]

35. Transitioning from "Hound," SoundHound launched SoundHound Chat AI in 2023, which SoundHound asserted "usher[s] in a new phase of voice-enabled, conversational AI."[16] SoundHound Chat AI serves as a voice assistant, delivering "the fastest, most accurate answers of any voice assistant available."[17]

36. SoundHound's Houndify platform, which powers both SoundHound's music recognition and chat AI apps, is a meticulously engineered ecosystem where biometric information is foundational, providing the infrastructure that allows SoundHound to achieve the "unprecedented accuracy" it claims.

37. Consequently, Houndify—and by extension, SoundHound—boasts a comprehensive suite of capabilities that facilitates "collecting a voiceprint that merely *could* be used to identify a plaintiff." *See Carpenter*, 580 F. Supp. 3d at 518 n.2; *see also Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1157 (N.D. Cal. 2024) ("[D]istrict courts, 'utilizing statutory text and dictionary definitions of the term, have defined ['voiceprint'] as data unique to an individual that *could be* used to identify someone' rather than as data that *was used* to identify someone.").

38. SoundHound's Privacy Policy (the "Privacy Policy"), which does not comply with BIPA, nonetheless confirms SoundHound's collection, capture, or

---

[14] *Id.*

[15] https://www.soundhound.com/voice-ai-products/wake-word/ (last accessed, April 23, 2025).

[16] https://www.sec.gov/Archives/edgar/data/1840856/000184085624000013/soun-20231231.htm (last accessed, April 23, 2025).

[17] https://www.soundhound.com/voice-ai-products/ (last accessed, April 23, 2025).

otherwise obtainment of Plaintiff's and the class members' voiceprints. The Privacy Policy explicitly states that when individuals utilize Houndify's voice-enabled features, SoundHound "may collect voice or audio interactions" and may also share this data with contractors for quality control purposes.[18] Furthermore, the Privacy Policy reveals that SoundHound retains information such as "registration information, location information, and recordings of your voice," all linked to each user's SoundHound-generated identifier. One such purpose of this data collection is to "refine and improve [SoundHound's] audio recognition capabilities."

39.     SoundHound lacks a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information when the initial purpose for collecting or obtaining such biometric information has been satisfied or within 3 years of the individual's last interaction with SoundHound, thereby violating 740 ILCS 14/15(a).

40.     Upon information and belief, SoundHound collected, captured, or otherwise obtained Plaintiff and the class members' voiceprints as a biometric identifier. However, SoundHound did not inform Plaintiff and the class members in writing of the specific purpose and length of term for which their biometric information was being collected, stored, and used, nor did SoundHound receive a written release by Plaintiff and the class members or their legally authorized representative, thereby violating 740 ILCS 14/15(b).

41.     Accordingly, Plaintiff and the class members seek $5,000 for each of SoundHound's violations of the BIPA, pursuant to 740 ILCS 14/20. Plaintiff and the class members also request injunctive relief, attorneys' fees, costs, and litigation expenses.

---

[18] https://www.soundhound.com/en/privacy#:~:text=My%20Personal%20Information.-,SoundHound%20Inc.,can%20control%20your%20advertising%20preferences. (last accessed, April 23, 2025).

**CLASS ACTION ALLEGATIONS**

42. Plaintiff brings this action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals, and as a member of the class (the "Class") defined as follows:

> All residents of Illinois whose voiceprints were collected, captured, received, or otherwise obtained by Defendant, within the applicable statutes of limitations ("Class Period").

43. Excluded from the Class are: Defendant, its assigns, successors, and legal representatives; any entities in which Defendant has controlling interests; and any Judicial officer to which this case is assigned, their immediate family and staff.

44. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise. Plaintiff also reserves the right to create additional subclasses.

45. At this time, Plaintiff does not know the exact number of class members; however, given the nature of the claims and the number of users, Plaintiff believes that the class members are so numerous that joinder of all members is impracticable.

46. There is a well-defined community of interest in the questions of law and fact involved in this case. The questions of law and fact that are common to the class members and predominate over questions that may affect individual class members include:

a) Whether SoundHound possessed, created, collected, captured, received through trade, stored, or otherwise obtained biometric identifiers or biometric information of Plaintiff and the Class;

b) Whether SoundHound developed, made available to the public, and complied with a retention and destruction policy in compliance with 740 ILCS 14/15(a);

  c) Whether SoundHound informed Plaintiff and the Class in writing that it was collecting their biometric identifiers or biometric information in compliance with 740 ILCS 14/15(b)(1);

  d) Whether SoundHound informed Plaintiff and the Class in writing of the specific purpose and length of term for which it was collecting their biometric identifiers or biometric information in compliance with 740 ILCS 14/15(b)(2);

  e) Whether SoundHound received written releases executed by Plaintiff and the Class before capturing, collecting, receiving through trade, or otherwise obtaining their biometric identifiers or biometric information in compliance with 740 ILCS 14/15(b)(3);

  f) Whether any violations of BIPA by SoundHound were reckless, intentional, or negligent;

  g) Whether Plaintiff and the class members were injured and harmed directly by Defendant's conduct; and/or

  h) Whether Plaintiff and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts.

47. Plaintiff's claims are typical of those of the Class because Plaintiff, like all class members, had her rights under BIPA violated based on SoundHound's failure to comply with the provisions of BIPA.

48. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

50. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Defendant has acted

or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

51. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

52. The requirements of Fed. R. Civ. P. 23(b)(3) are met as common issues predominate over any individual issues, and treatment of this matter as a class action is superior to numerous individual actions.

53. The litigation of separate actions by class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

54. Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful and deceptive conduct alleged herein. Unless a class-wide public injunction is issued, Defendant will also likely continue to advertise, market, and promote its product and services in an unlawful and misleading manner, and members of the Class will continue to be misled, harmed, and denied their rights under California law.

//
//
//
//
//
//

# COUNT I

## SoundHound's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(a)

### (By Plaintiff and the Class)

55. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

56. SoundHound is a "private entity" under BIPA. 740 ILCS 14/10.

57. During the Class Period, SoundHound has been in possession of the voiceprints and related biometric information of Plaintiff and the Class.

58. During the Class Period, SoundHound did not develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information to occur by the earlier of: (a) when the original purpose for collecting or obtaining such identifiers has been satisfied, or (b) within 3 years of the individual's last interaction with the private entity, as required by 740 ILCS 14/15(a).

59. SoundHound's failure to maintain and comply with data retention and destruction protocols harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiff and the Class, including the right to make informed choices about the use of and control over their inherently sensitive biometric data and to be free from unlawful retention of such sensitive data.

60. In violating BIPA, a law in effect since 2008, SoundHound acted, and continues to act, recklessly and/or intentionally. At the very least, SoundHound negligently violated BIPA.

61. Plaintiff and the class members are "aggrieved" under BIPA based on SoundHound's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute. 740 ILCS 14/20.

62. Plaintiff and the class members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(a)(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(a)(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(a)(3).

## COUNT II

### SoundHound's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(b)

### (By Plaintiff and the Class)

63. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

64. During the Class Period, SoundHound collected, captured, received through trade, and/or otherwise obtained the voiceprints and related biometric information of Plaintiff and the Class.

65. Plaintiff and the Class did not execute a written release related to SoundHound's collection, capturing, purchasing, receiving through trade, or otherwise obtaining their voiceprints or related biometric information.

66. During the Class Period, SoundHound did not properly inform Plaintiff and the Class in writing that their biometric identifiers and/or biometric information was being collected and/or stored, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

67. During the Class Period, SoundHound systematically and intentionally collected, obtained, used, and/or stored the biometric identifiers and/or biometric information of Plaintiff and the Class without first obtaining from Plaintiff and the

class members the specific executed written release required by 740 ILCS 14/15(b)(3).

68. SoundHound's failure to disclose its practices and obtain the informed consent of Plaintiff and the class members before collecting, capturing, receiving through trade, and/or otherwise obtaining their biometric data harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiff and the Class, including the right to make informed choices about the use of and control over their inherently sensitive biometric data and to be free from the unlawful collection of such sensitive data.

69. In violating BIPA, a law in effect since 2008, SoundHound acted, and continues to act, recklessly and/or intentionally. At the very least, SoundHound negligently violated BIPA.

70. Plaintiff and the class members are "aggrieved" under BIPA based on SoundHound's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under 740 ILCS 14/20.

71. Plaintiff and the class members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(a)(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(a)(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(a)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of herself and the Class as follows:

A. An order certifying the proposed Class; appointing Plaintiff as representative of the Class; and appointing Plaintiff's undersigned counsel as Class counsel;

B. A declaration that Defendant is financially responsible for notifying class members of the pendency of this suit;

|   |   |   |
|---|---|---|
| C. | A declaration that Defendant has committed the violations alleged herein; |
| D. | An award of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(a)(2), or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(a)(1); |
| E. | An order enjoining Defendant from creating, collecting, obtaining, storing, using, selling, leasing, trading, and profiting from Plaintiff's and the Class's biometric identifiers and biometric information until done so in compliance with BIPA; |
| F. | An order awarding Plaintiff and the other class members the reasonable costs and expenses of suit, including their attorneys' fees pursuant to 740 ILCS 14/20(a)(3); |
| G. | An order awarding prejudgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and |
| H. | Any further relief that the Court may deem appropriate. |

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all claims so triable.

Date: May 1, 2025         BEN TRAVIS LAW, APC

By: /s/ *Ben Travis*
Ben Travis (305641)
ben@bentravislaw.com
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Phone: (619) 353-7966

Attorneys for Plaintiff and the Proposed Class